1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                         SOUTHERN DISTRICT OF CALIFORNIA

10

11   LARRY CHARLES CLEVELAND,        )   Civil No. 06cv1578-WQH (BLM)
                                      )
12                    Plaintiff,      )   **(1) REPORT AND RECOMMENDATION**
                                      )   **FOR ORDER GRANTING IN PART AND**
13   v.                               )   **DENYING IN PART DEFENDANTS'**
                                      )   **MOTION TO DISMISS [Doc. No.**
14   T DENNISON, et al.,              )   **43] and (2) ORDER GRANTING**
                                      )   **DEFENDANTS' REQUEST FOR**
15                    Defendants.     )   **JUDICIAL NOTICE [Doc. No. 43-**
                                      )   **2]**
16   _____ )

17        This Report and Recommendation is submitted to United States

18   District Judge William Q. Hayes pursuant to 28 U.S.C. § 636(b) and

19   Local Civil Rules 72.1(c) and 72.3(f) of the United States District

20   Court for the Southern District of California.

21        On August 8, 2006, Plaintiff Larry Charles Cleveland, a state

22   prisoner proceeding *pro se* and *in forma pauperis*, filed this civil

23   rights suit against several defendants under 42 U.S.C. § 1983 and

24   the Americans with Disabilities Act (42 U.S.C. § 12101 *et seq.*).

25   Doc. No. 1.  Defendants D. M. Barnes, T. Dennison, S. Hernandez, E.

26   Hoffman, B. Larson, M. McMinn, A. Moreno, R. Perez, A. Pittman, E.

27   Reyes, J. T. Stovall, J. Vasquez, S. Walls, D. K. Williams, A. L.

28   Cota, and J. S. Woodford (collectively, "Defendants") filed a motion

1    to dismiss the Complaint on May 11, 2007, on the grounds of failure

2    to exhaust administrative remedies, failure to state a claim and

3    qualified immunity.   Doc. No. 43.   Plaintiff timely opposed the

4    motion [Doc. No. 50] and Defendants filed a reply on July 23, 2007

5    [Doc. No. 54].

6         This Court finds the issues appropriate for decision on the

7    papers and without oral argument pursuant to Local Civil Rule

8    7.1.(d)(1).   See Doc. Nos. 44 & 48.   The Court has considered the

9    Complaint, Defendants' Motion to Dismiss, Plaintiff's Opposition,

10   Defendants' Reply and all supporting documents submitted by the

11   parties.   For the reasons set forth below, this Court **RECOMMENDS**

12   that Defendants' Motion to Dismiss [Doc. No. 43] be **GRANTED IN PART**

13   **AND DENIED IN PART.**

14                              **BACKGROUND**

15        Plaintiff claims his constitutional rights were violated

16   while he was incarcerated at the R.J. Donovan Correctional Facility.

17   Doc. No. 1.   Though Plaintiff's numerous complaints are set forth in

18   greater detail below, he generally alleges that many of the

19   Defendants repeatedly harassed him following false allegations that

20   he engaged in sexual misconduct with a prison teacher and retaliated

21   against him as a result of various complaints he lodged.   Id.

22   Additionally, Plaintiff highlights several incidents where officers

23   allegedly used excessive force against him and/or acted with

24   deliberate indifference to his serious medical needs.   Id.

25        As detailed more thoroughly below, Plaintiff filed numerous

26   administrative complaints and appeals within the prison grievance

27   system in response to these perceived wrongs.   The instant Complaint

28   alleges claims against twenty-four defendants.   However, Plaintiff

1  has never served Defendants Staneff, Avila, Hill, Merto, Ortiz,

2  Graham and Camacho and the District Judge previously dismissed

3  Defendant Schwarzenegger from this case (see Doc. No. 55).

4                           **LEGAL STANDARD**

5  **A.    Motion to Dismiss for Failure to Exhaust Administrative**
   **Remedies under Federal Rule of Civil Procedure 12(b)**

6

7       The Prison Litigation Reform Act ("PLRA") of 1995 provides

8  that:

9          No action shall be brought with respect to prison
           conditions under section 1983 of this title, or any
10         other Federal law, by a prisoner confined in any jail,
           prison, or other correctional facility until such
11         administrative remedies as are available are
           exhausted.

12

13  42 U.S.C. § 1997e(a).  "Congress enacted § 1997e(a) to reduce the

14  quantity and improve the quality of prisoner suits." Porter v.

15  Nussle, 534 U.S. 516, 524 (2002).  However, the prisoner is not

16  required to specially plead or demonstrate exhaustion in his or her

17  complaint because failure to exhaust is an affirmative defense under

18  the PLRA.  Jones v. Bock, __ U.S. __, 127 S.Ct. 910, 921 (2007).

19       The proper vehicle for challenging a complaint based on

20  failure to exhaust administrative remedies is an unenumerated motion

21  under Rule 12(b) of the Federal Rules of Civil Procedure. Wyatt v.

22  Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  Unlike under Rule

23  12(b)(6), "[i]n deciding a motion to dismiss for a failure to

24  exhaust nonjudicial remedies, the court may look beyond the

25  pleadings and decide disputed issues of fact." Id. at 1119-20.  If

26  the district court concludes that the prisoner has failed to exhaust

27  his or her administrative remedies, the claim should be dismissed

28  without prejudice. O'Guinn v. Lovelock Corr. Ctr, 502 F.3d 1056,

1   1059, 1063 (9th Cir. 2007); <u>Wyatt</u>, 315 F.3d at 1120.

2       Failure to exhaust may not be waived.  <u>See</u> <u>Woodford v. Ngo</u>,

3   __ U.S. __, 126 S.Ct 2378, 2382 (2006) ("[e]xhaustion is no longer

4   left to the discretion of the district court").  The United States

5   Supreme Court has stated as recently as this year that "[t]here is

6   no question that exhaustion is mandatory under the PLRA and that

7   unexhausted claims cannot be brought in court." <u>Jones</u>, 127 S.Ct at

8   918-19.   A prisoner also cannot satisfy the PRLA's exhaustion

9   requirement by "filing an untimely or otherwise procedurally

10  defective administrative grievance or appeal."  <u>Ngo</u>, 126 S.Ct at

11  2382.  Nor can a prisoner who did not make any attempt to utilize

12  the prison grievance system sidestep the exhaustion requirement by

13  arguing that it now would be futile to attempt to exhaust within the

14  prison system.  <u>Booth v. Churner</u>, 532 U.S. 731, 741 n.6 (2001) ("we

15  stress the point . . . that we will not read futility or other

16  exceptions into statutory exhaustion requirements where Congress has

17  provided otherwise"); <u>see also</u> Ngo, 126 S.Ct at 2391 ("if the party

18  never pursues all available avenues of administrative review, the

19  person will never be able to sue in federal court").

20  **B.**     **<u>Motion to Dismiss For Failure to State a Claim Under Federal</u>**
            **<u>Rule of Civil Procedure 12(b)(6)</u>**
21

22      A motion to dismiss under Rule 12(b)(6) of the Federal Rules

23  of Civil Procedure tests the legal sufficiency of the plaintiff's

24  claims.   <u>See</u> Fed. R. Civ. P. 12(b)(6).  In considering a Rule

25  12(b)(6) motion, "we do not require heightened fact pleading of

26  specifics, but only enough facts to state a claim to relief that is

27  plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct.

28  1955, 1974 (2007).  "However, the court is not required to accept

1    legal conclusions cast in the form of factual allegations if those
2    conclusions cannot reasonably be drawn from the facts alleged."
3    Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004)
4    (quoting Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th
5    Cir. 1994)).   The issue is not whether the plaintiff ultimately
6    will prevail, but whether he has properly stated a claim upon which
7    relief could be granted.   Jackson v. Carey, 353 F.3d 750, 755 (9th
8    Cir. 2003).

9        When the plaintiff is appearing *pro se*, the court must
10   construe the pleadings liberally and afford the plaintiff any
11   benefit of doubt.   Thompson v. Davis, 295 F.3d 890, 895 (9th Cir.
12   2002) (citing Karim-Panahi v. Los Angeles Police Dept., 839 F.2d
13   621, 623 (9th Cir. 1988)).   This rule of liberal construction is
14   "particularly important" in civil rights cases.   Ferdik v. Bonzelet,
15   963  F.2d  1258,  1261  (9th  Cir.  1992).    In  giving  liberal
16   interpretation to a *pro se* civil rights complaint the court is not,
17   however, permitted to "supply essential elements of the claim that
18   were not initially pled."   Ivey v. Bd. of Regents of the Univ. of
19   Alaska, 673 F.2d 266, 268 (9th Cir. 1982).   "Vague and conclusory
20   allegations of official participation in civil rights violations are
21   not sufficient to withstand a motion to dismiss."   Id.

22       If the court concludes that dismissal is appropriate, the
23   court has discretion to dismiss the complaint either with or without
24   leave to amend.   Lopez v. Smith, 203 F.3d 1122, 1127, 1130 (9th Cir.
25   2000) (en banc) (concluding that the PLRA did not strip district
26   courts  of  this  discretion).    Because  the  language  of  section
27   1915(e)(2) parallels the language of Rule 12(b)(6), the Ninth
28   Circuit has suggested that there is no reason to depart from its

1   longstanding policy that when dismissing a complaint for failure to

2   state a claim, "a district court should grant leave to amend even if

3   no request to amend the pleading was made, unless it determines that

4   the pleading could not possibly be cured by the allegation of other

5   facts." Id. at 1127.

6                                **DISCUSSION**

7        Defendants contend that Counts 1-3 and 6-10 of Plaintiff's

8   Complaint, as well as an unenumerated claim set forth on pages 63-64

9   of the Complaint, are unexhausted.  Mem. P. & A. Supp. Defs.' Mot.

10  to Dismiss ("Defs.' Mem.") at 3-8, 12, 14-16.  Defendants argue that

11  Counts 1, 4, 5 and 10, as well as an unenumerated claim against

12  Defendants Cota and Stovall, fail to state claims for which relief

13  may be granted.  Id. at 8-14, 19-20.  Finally, Defendants seek to

14  have what sequentially would be Claim 11, which alleges that

15  Defendant Moreno violated Plaintiff's Eighth Amendment rights and

16  the Americans with Disabilities Act, dismissed on the grounds that

17  Defendant Moreno is entitled to qualified immunity.  Id. at 16-19.

18  **A.    Unexhausted Claims**

19       Unless otherwise specified, the facts are presented as set

20  forth in the Complaint and in the light most favorable to Plaintiff.

21  Where necessary, the Court decides disputed issues of fact.  Wyatt,

22  315 F.3d at 1119-20.

23       **1.   Claims Pertaining to the May 17, 2004 Incident**

24       Counts 1-3 arise from an incident that took place on May 17,

25  2004.  Beginning in late October 2003, Plaintiff contends that

26  Defendant Dennison conspired with Defendants Hill and Merto (as well

27  as other officers not named as Defendants in the Complaint) and

28  monitored him in an attempt to catch Plaintiff engaging in sexual

1    misconduct with Ms. Dakota, a prison teacher.   Compl. at 10-15.
2    This "harassing" behavior continued through the end of 2003 and into
3    2004.   Id. at 10-18.

4              On May 17, 2004, Plaintiff entered the workchange office
5    after being released from his assigned work.   Id. at 18-19.
6    Pursuant to the standard daily procedure, Plaintiff removed all of
7    his clothing, except his shorts, and set them on the counter in
8    front of Defendant Dennison.   Id. at 19.   He then followed
9    Dennison's instructions to take his tennis shoes and socks and walk
10   through the metal detector while Dennison examined his clothes.   Id.
11   After walking through the metal detector, Plaintiff put his shirt
12   and socks back on.   Id.   Plaintiff contends that he then repeated
13   this procedure several more times at Dennison's request.   Id. at 19-
14   20.  When he sat down to take his socks off before going through the
15   metal detector for the fourth time, Dennison approached him and
16   asked for his left sock.   Id. at 20.   Dennison said he felt
17   something in the sock, which Plaintiff claimed was a separate
18   elastic ankle sock wadded up inside the first sock.   Id.   Plaintiff
19   tried to grab the sock from Dennison, who then threw it to another
20   officer.   Id. at 20-21.   That officer left the room with the sock,
21   which later was determined to contain marijuana (according to
22   reports Plaintiff attached to his Complaint).   Id. at 21, Ex. A.

23             At the same time, an alarm sounded and Dennison ordered
24   Plaintiff and the other prisoners in the workchange area to get down
25   on the ground.   Id.   Plaintiff refused due to medical impairments.
26   Id.  As a result, Dennison sprayed him with pepper spray, wrestled
27   him to the floor, and with the help of other officers, restrained
28   him in handcuffs and leg shackles.   Id. at 22-23.

1    Thereafter, Defendants Larson and Reyes escorted Plaintiff to
2    the infirmary. Id. at 28. During the walk, Plaintiff alleges that
3    Larson tightened the handcuffs behind his back and twisted his arm
4    upwards, causing "enormous pain." Id. at 29. When they reached the
5    infirmary, Plaintiff refused to sign the CDC-7219 form presented to
6    him and, therefore, received no treatment for his injuries or pepper
7    spray exposure.[1] Id. at 29-31.

8    Plaintiff raises three claims as a result of this incident.
9    In Count 1, Plaintiff alleges that Defendants Dennison, Hill and
10   Merto deprived Plaintiff of his Equal Protection rights and
11   interfered with his civil rights in violation of 42 U.S.C.
12   §§ 1985(3) and 1986. Id. at 77. Count 2 alleges that Defendant
13   Dennison used excessive force in violation of the Eighth Amendment.
14   Id. Finally, in Count 3, Plaintiff contends that Defendants Larson,
15   Reyes and Hernandez were deliberately indifferent to his serious
16   medical needs in violation of the Eighth Amendment. Id. at 78.

17   Defendants argue that these counts must be dismissed because
18   Plaintiff failed to properly exhaust his administrative remedies.
19   Defs.' Mem. at 7-8. As Defendants correctly explain, the
20   administrative appeal system for California inmates is described in
21   Title 15 of the California Code of Regulations. See Defs.' Mem. at
22   7 n.3. Under these regulations, inmates "may appeal any
23   departmental decision, action, condition, or policy which they can

---

25   [1]    Plaintiff attaches the referenced CDC-7219 form, also called a
26   "Medical Report of Injury or Unusual Occurrence" form, to his Complaint. Compl.,
27   Ex. A. There is no line on the form for the prisoner's signature, but MTA
     Hernandez did write on an open space on the form "refused to be examined for
28   injuries." Id.

1   demonstrate as having an adverse effect upon their welfare."  15
2   C.C.R. § 3084.1(a).  An inmate wishing to exhaust his or her
3   remedies must complete four steps: (1) fill out a complaint form
4   (generally termed a "602" form), present it to the prison official
5   involved, and attempt informal resolution; (2) if not resolved, file
6   for and receive a first formal level decision; (3) if relief is not
7   granted at the first formal level, file for and receive a second
8   formal level decision; and (4) if relief is not granted at the
9   second level, file for and receive a third level decision from the
10  Director of Corrections.  15 C.C.R. § 3084.5.  However, of key
11  importance is the requirement that "[a]n appellant must submit the
12  appeal within 15 working days of the event or decision being
13  appealed, or of receiving an unacceptable lower level appeal
14  decision."  15 C.C.R. § 3084.6(c).

15       In this case, the regulations required Plaintiff to present
16  his complaint to the prison official(s) involved within fifteen days
17  of May 17, 2004, and then timely appeal each denial, in order to
18  have timely and properly exhausted his claim.  15 C.C.R. § 3084.5
19  and 15 C.C.R. § 3084.6(c); Jones, 127 S.Ct at 918-19.  As previously
20  noted, an inmate cannot satisfy the PRLA's exhaustion requirement by
21  "filing an untimely or otherwise procedurally defective
22  administrative grievance or appeal."  Ngo, 126 S.Ct at 2382.  Here,
23  J.T. Stovall, the Appeals Coordinator at the prison, submitted a
24  sworn declaration stating that:

25       The California Attorney General's Office requested
         this Office research its records to ascertain if
26       Plaintiff Cleveland exhausted any inmate appeals at
         the institutional level (up to the second formal level
27       of appeal) as to any allegations of excessive force,
         denial of equal protection or deliberate indifference
28       to Plaintiff's health or safety arising from an

                                    -9-                    06cv1578-WQH (BLM)

incident on May 17, 2004.  The appeals log and copies of appeals maintained by the Appeals Office, which are kept in the ordinary course of business at or near the time this Office receives an inmate appeal, show that Plaintiff did not properly file or exhaust any such appeal at the institutional level.

Decl. of J.T. Stovall Supp. Defs.' Mot. to Dismiss ("Stovall Decl.") ¶ 7.  The attached log does not show that any appeals related to staff conduct were received from Plaintiff within fifteen days of May 17, 2004.[2]  Id.

Moreover, Plaintiff admits that he did not submit any appeal of the May 17, 2004 incident until April 11, 2005.  Compl., Ex. A; Pl.'s Opp'n at 10.  "A prisoner's concession to nonexhaustion is a valid ground for dismissal, so long as no exception to exhaustion applies."  Wyatt, 315 F.3d at 1120.  While Plaintiff submitted his April 11, 2005 grievance on a 602 form, he added language to the form specifying that it was a "Citizen's Complaint" and that he was filing it within twelve months of the events giving rise to the complaint in accordance with 15 C.C.R. § 3391(b).  Compl., Ex. A.

_____

[2]    Plaintiff argues that he submitted appeals in May, July, August, October and November of 2004 "raising the matters state[d] in plaintiff's complaint" and prison officials never responded to or returned these appeals. Pl.'s Opp'n at 9-10.  But the prison log, which reflects many complaints by Plaintiff, shows no evidence that Plaintiff filed the alleged appeals.  Stovall Decl., Ex. A.  Moreover, Plaintiff does not attach copies of any appeals demonstrating that he properly submitted them within the fifteen day window and it appears that only the alleged May 2004 appeal would have fallen within the required time frame (presuming it pertained to the May 17, 2004 incident, which Plaintiff does not specifically claim).  While Plaintiff did submit an appeal on June 1, 2004 (within the applicable time frame), it pertains to Plaintiff's claim that he was denied access to legal materials and the law library, not the May 17, 2004 incident.  Compl., Ex. B.  Accordingly, the Court does not find this argument sufficient to overcome Defendants' showing that Plaintiff did not file a timely appeal regarding this incident.

1   As such, Plaintiff appears to argue that his administrative
2   complaint was timely under 15 C.C.R. § 3391(b), regardless of
3   whether or not he complied with the fifteen-day requirement.

4       Plaintiff's reliance on 15 C.C.R. § 3391(b) as affording him
5   more than the standard fifteen days in which to lodge a complaint is
6   misplaced.  15 C.C.R. § 3391(b) expressly is limited to complaint's
7   lodged by **non-inmates**, stating:

8           An allegation by a non-inmate of misconduct by a
            departmental peace officer as defined in section
9           3291(b), is a citizen's complaint pursuant to Penal
            Code section 832.5. Citizen's complaints alleging
10          misconduct of a departmental peace officer shall be
            filed within twelve months of the alleged misconduct.
11

12  15 C.C.R. § 3391(b).  Plaintiff was incarcerated at the time of the
13  incident and, therefore, was required to submit his grievance within
14  fifteen days of May 17, 2004.

15      The Court finds that Plaintiff's concession that he did not
16  file an appeal of the May 17, 2004 incident until April 11, 2005,
17  coupled with Stovall's declaration and the log records showing the
18  absence of any related appeals during the fifteen days following May
19  17, 2004, demonstrate that Plaintiff's claims regarding the May 17,
20  2004 incident are unexhausted.  See Bovarie v. Giurbino, 421 F.
21  Supp. 2d 1309, 1314-1315 (S.D. Cal. 2006) (relying on Wyatt and
22  holding that declaration of appeals officer that prisoner failed to
23  exhaust corroborated prisoner's concession to nonexhaustion and
24  evidence together justified dismissal).  Accordingly, the Court
25  finds that Counts 1-3 against Defendants Dennison, Larson, Reyes and
26  ///
27  ///
28  ///

1    Hernandez are unexhausted and **RECOMMENDS** that they be **DISMISSED**.[3]

2            **2.   Claims Pertaining to the August 6, 2004 Incident**

3            Plaintiff claims that on August 6, 2004, officers came to his

4    cell and presented him with a subpoena ordering him to appear in

5    Court that day on charges related to the May 17, 2004 incident.

6    Compl. at 48.  Plaintiff objected because he had not received prior

7    notification  of  the  court  appearance,  as  required  by  the

8    regulations.  Id. at 49.  In response, Defendant Avila called in

9    additional officers to extract Plaintiff from his cell.  Id.  During

10   this extraction, Plaintiff claims he was subjected to verbal threats

11   and abuse, which Defendants Avila and Perez observed but failed to

12   discourage.  Id. at 49-50.  Once he left for his Court appearance,

13   Plaintiff  contends  that  Defendants  Staneff  and  Graham,  in

14   retaliation for asserting his right to prior notification of court

15   appearances,  searched  his  cell  and  read  his  confidential  legal

16   papers.  Id. at 50-51.  Plaintiff returned to find his confidential

17   legal papers and court documents in disarray.  Id. at 51.

18           Plaintiff  appears  to  raise  two  claims  related  to  this

19   incident.  In Count 6, Plaintiff asserts that Defendants Staneff and

20   Graham  violated  his  constitutional  rights  when  they  retaliated

21   against him for asserting his First Amendment rights.  Id. at 78-79.

22   In  Count  8,  Plaintiff  claims  that  Defendants  Avila  and  Perez

23   violated  his  constitutional  rights  when  they  acted  with  deliberate

24   indifference  to  the  substantial  risk  that  he  would  be  harmed  when

25   the  other  officers  retaliated  against  him.  Id. at 79.

26   _____

27           [3]      Because the Court finds that Count 1 is unexhausted and should be
     dismissed on that basis, the Court finds it unnecessary to address Defendants'
28   additional argument that Count 1 fails to state a claim.

1    Defendants contend that these claims[4] must be dismissed

2    because Plaintiff did not file a timely inmate appeal or receive

3    final resolution of his claims.  Defs.' Mem. at 12.  Defendants

4    point to a grievance described as log no. 05-490, which Plaintiff

5    attached to his Complaint (see Compl., Ex. E).  Id.  This grievance

6    described the August 6, 2004 acts of retaliation by Defendants

7    Staneff and Graham, but Plaintiff dated it January 23, 2005.

8    Compl., Ex. E.  According to a declaration filed by N. Grannis, the

9    Chief of the Inmate Appeals Branch:

10           The screenout records query [attached to his
             declaration] shows that the inmate appeal, log no. RJD
11           05-490, that inmate Cleveland attempted to file
             concerning a complaint against staff arising from an
12           August 6, 2004 incident was screen out by my office
             because it did not comply with the inmate appeals
13           process.  This appeal was subsequently canceled and
             therefore remains unexhausted.
14

15   Decl. of N. Grannis Supp. Defs.' Mot. to Dismiss ¶ 8.

16           In response, Plaintiff argues that his retaliation claims

17   related to his refusal to come out of his cell for a court

18   appearance were exhausted through the state courts (he cites case

19   numbers from the Superior Court, Court of Appeal, and California

20   Supreme Court).  Pl.'s Opp'n at 15.

21           The Court agrees that Claims 6 and 8 are unexhausted because

22   Plaintiff did not appeal any acts related to the August 6, 2004

23

24        [4]   Defendants cite only to Count 8, but argues that claims related to
25   this incident must be dismissed as unexhausted. Defs.' Mem. at 12.  Count 6 also
     pertains to this incident, but alleges claims against Defendants Staneff and
26   Graham only — neither of whom have been served.  Because the Court finds that
     Count 6 also pertains to this incident, the Court will address these counts
27   jointly.  The unserved Defendants will be addressed further in Section C of this
28   Order.

incident until well beyond the fifteen day time period for doing so.
See 15 C.C.R. § 3084.6(c).  Once again, the Court cannot entertain
unexhausted claims.  Jones, 127 S.Ct at 918-19; Ngo, 126 S.Ct at
2382.  While Grannis' declaration in and of itself is insufficient
to meet Defendants' affirmative burden because it does not explain
how the appeal failed to comply or whether the prison complied with
its obligation to explain to Plaintiff why his appeal was
unacceptable and how to correct it (see 15 C.C.R. § 3084.3(d)),
Plaintiff once again has admitted that he did not submit an appeal
as to this incident until months after it occurred (see Compl., Ex.
E).  As previously noted, a court may dismiss if the prisoner has
conceded failure to exhaust.  Wyatt, 315 F.3d at 1120.  Furthermore,
Plaintiff's concession that he did not file his appeal until January
23, 2005, strongly suggests that his complaint was "cancelled"
because it was untimely.  Accordingly, the Court finds that
Plaintiff's concession, together with Grannis' declaration and the
attached log records, establishes that Plaintiff's claims are
unexhausted.

On a final note, to the extent Plaintiff argues that he
exhausted the claims in state court, this argument fails because the
PLRA requires *administrative* exhaustion.  Congress specifically has
stated that the reason for this is to allow the institution an
opportunity to correct errors internally.  42 U.S.C. § 1997e(a);
Ngo, 126 S.Ct at 2385 ("[b]ecause exhaustion requirements are
designed to deal with parties who do not want to exhaust,
administrative law creates an incentive for these parties to do what
they would otherwise prefer not to do, namely, to give the agency a
fair and full opportunity to adjudicate their claims").  Claims

filed outside of the institution, therefore, are irrelevant for PLRA exhaustion purposes.   See O'Guinn, 502 F.3d at 1062 (rejecting prisoner's argument that he exhausted his claim by filing a complaint with the Department of Justice because "the Supreme Court has made clear that the PLRA requires a prisoner to exhaust the prison's internal grievance process").

In sum, this Court **RECOMMENDS** that Claims 6 and 8 be **DISMISSED** as unexhausted.[5]

### 3.   Claims Pertaining to the October 12, 2004 Incident

Plaintiff submitted a complaint to Defendant Barnes regarding the August 6, 2004 incident requesting that an investigation be conducted.  Compl. at 51-52.  He alleges that, as a result of having lodged a complaint, Defendant Staneff had a "vendetta" against him and sought to retaliate against him.  Id. at 52.  On October 12, 2004, Staneff was serving the evening meal and placed a meal on the tray slot for Plaintiff's cell.  Id. at 53.  Plaintiff asked if Defendant Staneff could leave the tray on the slot because he was busy doing legal writing at his desk.  Id.  Staneff said no and removed the tray.  Id.  In response, Plaintiff leaped up and stuck

---

[5]   To the extent Plaintiff argues that he exhausted these claims by way of an appeal contesting the district attorney's failure to notify him within ten days that the May 17, 2004 incident had been referred to them for prosecution (this prosecution being the impetus for the August 6, 2004 court appearance), Plaintiff's claim also fails.  In the appeals Plaintiff attaches to his Complaint, he lists the date of this incident as June 25, 2004. Compl., Ex. D. However, he did not submit a related grievance until a month later on July 25, 2004.  Id.  Additionally, the appeal eventually was cancelled at the third level because the prison does not have jurisdiction over the district attorney's actions.  Id.  Because this appeal was untimely and procedurally defective, it does not provide a proper basis for finding exhaustion.  Ngo, 126 S. Ct. at 2382.

his left arm through the slot in an effort to retrieve the tray. Id.  Staneff allegedly then began kicking the tray slot.  Id. Defendant Williams, who was nearby, joined Defendant Staneff in "kicking, hitting, pushing, punching, and applying their body weight against the tray slot door" in an effort to force Plaintiff's arm back into his cell. Id. at 53-54. When Plaintiff finally attempted to jerk his arm back through the slot, he claims that Staneff sprayed him in the eyes with pepper spray.  Id. at 54.  Plaintiff submits that Defendant Pittman observed all of these proceedings and failed to intervene.  Id. at 57.

Following the incident, Plaintiff was not taken to the infirmary, but Defendant Camacho examined him outside his cell.  Id. at 55-56.  Camacho allegedly did not treat Plaintiff's eyes and only treated his left arm by way of suggesting that Plaintiff wash it with soap and water.  Id. at 56.

Plaintiff raises four claims pertaining to the October 12, 2004 incident.  In Count 7, Plaintiff alleges that Defendants Staneff and Williams violated his First and Eighth Amendment rights by using excessive force against him in retaliation for Plaintiff's filing of a complaint against Defendant Staneff.  Id. at 79.  In Count 8, Plaintiff alleges that Defendants Avila, Perez and Pittman acted with deliberate indifference to Plaintiff's serious risk of harm in violation of his Eighth Amendment rights.  Id. Similarly, Plaintiff claims in Count 9 that Defendants Barnes, Avila, Perez and Pittman acted with deliberate indifference by breaching their respective duties to take protective measures to deter Defendant Staneff's misconduct — again, in violation of Plaintiff's Eighth Amendment rights.  Id. at 80.  Finally, in Count 10, Plaintiff avers

1    that Defendants Barnes, Avila and Woodford violated his Eighth

2    Amendment rights in that they were deliberately indifferent to a

3    pattern and practice of officers using excessive force in the

4    prisons — a practice of which these individuals were put on notice.

5    Id.

6         Defendants argue that Counts 7-10 must be dismissed due to

7    Plaintiff's failure to exhaust his administrative remedies.  Defs.'

8    Mem. at 14-15.  While Defendants acknowledge that Plaintiff did file

9    an appeal relating to the October 12, 2004 incident (log no. 05-

10   328), Defendants argue that this appeal is irrelevant because it

11   only challenged on due process grounds the disciplinary proceedings

12   against Plaintiff with respect to a rules violation he received for

13   the incident and sought dismissal of the rules violation report; it

14   did not address Plaintiff's excessive force/retaliation claims.  Id.

15   at 14.  Defendants submit that only the "citizen's complaint," which

16   Plaintiff belatedly filed on February 16, 2005, addressed

17   Plaintiff's excessive force allegations.  Id. at 14-15.  The

18   Complaint confirms that the appeals coordinator screened the

19   Citizen's Complaint out because it was filed late.  Id. at 15

20   (citing Compl. at 62).  As for Plaintiff's deliberate indifference

21   claims, Defendants assert that Plaintiff procedurally defaulted

22   these claims and argues they should be dismissed under Woodford v.

23   Ngo.  Id. at 15.

24        In his opposition, Plaintiff denies that he failed to exhaust

25   these claims, but provides no elaboration or evidence to support his

26   argument.  Pl.'s Opp'n at 17.

27        Defendants are correct that Plaintiff also failed to properly

28   exhaust this claim.  The Court's review of Plaintiff's appeal in log

1    no. 05-328 reveals that it does, in fact, only raise a due process
2    claim challenging the discipline Plaintiff received following the
3    October 12, 2004 incident, not claims of excessive force,
4    retaliation, or deliberate indifference. <u>See</u> Compl., Ex. F. Thus,
5    it did not sufficiently alert the officers to the nature of the
6    claims so as to provide prison administrators with a fair
7    opportunity to address the problem. <u>Jones</u>, 127 S.Ct. at 915.
8    Regardless, Plaintiff signed that grievance and submitted it at the
9    informal level on February 15, 2005. <u>Id.</u> This is well past the
10   fifteen-day window for doing so. <u>See</u> 15 C.C.R. § 3084.6(c).

11        The same is true of Plaintiff's February 16, 2005 "Citizen's
12   Complaint." <u>See</u> Compl., Ex. F. In this complaint, Plaintiff did
13   challenge the actions of Staneff, Walls and Hoffman as constituting
14   retaliatory excessive force and Plaintiff also asserted claims
15   against Barnes, Avila, Pittman and Perez for their deliberate
16   indifference in violation of the Eighth Amendment. <u>Id.</u> But again,
17   he signed the grievance four months after the October 12, 2004
18   incident occurred, which makes his complaint untimely. <u>See</u> 15
19   C.C.R. § 3084.6(c). Plaintiff admits as much by explaining in his
20   Complaint that the Appeals Coordinator returned his Citizen's
21   Complaint with a screening form indicating that it was being
22   returned as untimely. Compl. at 62. Having conceded not only that
23   he filed his appeal late, but that he received a notice from the
24   appeals coordinator explaining that it was not filed *because* it was
25   after the fifteen day window, Plaintiff now offers no evidence to
26   rebut Defendants' demonstration that these claims were not properly
27   exhausted.
28   ///

1  Because exhaustion is a mandatory requirement, <u>Jones</u>, 127
2  S.Ct at 918-19, which this Court is not authorized to waive, <u>Ngo</u>,
3  126 S.Ct at 2382, and because Defendants have demonstrated
4  nonexhaustion and Plaintiff admits that he failed to exhaust Counts
5  7-10, <u>Wyatt</u>, 315 F.3d at 1120, this Court **RECOMMENDS** that Counts 7-
6  10 be **DISMISSED**[6].

7  **4.** **Claims Pertaining to the November 12, 2004 Incident**

8  While these allegations do not appear to correspond to an
9  enumerated claim, Plaintiff alleges on pages 62-64 of his Complaint
10 that Defendants Staneff, Hoffman, Walls, Vasquez, and Ortiz
11 retaliated against him on November 12, 2004, because of complaints
12 Plaintiff had made against Staneff. Compl. at 63-64. Specifically,
13 Plaintiff alleges that while Hoffman escorted Plaintiff to the
14 shower, Walls entered his cell, read his confidential legal papers,
15 and confiscated his personal items[7]. <u>Id.</u> Thereafter, Plaintiff
16 claims Defendants Staneff, Walls, Hoffman, Vasquez and Ortiz
17 conspired to discourage him from exercising his First Amendment
18 rights by subjecting him to frequent cell searches, confiscating and
19 destroying his property, using excessive force, and issuing false
20 rules violation reports against him. <u>Id.</u> at 64.

21 Defendants argue that these unenumerated claims must be
22 dismissed because Plaintiff failed to exhaust them properly. Defs.'

23 _____

24      [6]   Because the Court finds that Count 10 is unexhausted and should be
       dismissed on that basis, the Court finds it unnecessary to address Defendants'
25     additional argument that Count 10 fails to state a claim.

26      [7]   The prison records attached to the Complaint suggest that the
27     correctional officer confiscated a "hard core" pornography magazine that was
       hidden within Plaintiff's legal papers and "excess fruit" (defined by the officer
28     as more than a day's ration). Compl., Ex. F.

1   Mem. at 16.   While Plaintiff references exhibit I of his Complaint

2   to demonstrate exhaustion, Defendants contend that the attached

3   documentation shows only that Plaintiff's administrative grievance

4   of these issues was untimely.   Id.   Defendant asserts that Plaintiff

5   waited until August 27, 2005, to administratively grieve these

6   issues and the documentation at exhibit I shows that his inmate

7   appeal was rejected as untimely.   Id.

8        In his opposition, Plaintiff argues that he did exhaust this

9   claim, as demonstrated by the documentation he attached to his

10  Complaint at exhibit F.   Pl.'s Opp'n at 17.

11       The August 27, 2005 "Citizen's Complaint" at Complaint

12  Exhibit I challenges ongoing retaliatory conduct by Defendant

13  Vasquez that allegedly occurred between November 2004 and April

14  2005.   Compl., Ex. I.   The record at Complaint Exhibit F contains a

15  February 16, 2005 "Citizen's Complaint," which addresses Defendants

16  Hoffman, Staneff and Wall's conduct on November 12, 2004, and again

17  attempts to take advantage of the one year limitations period for

18  filing such a complaint.   Compl., Ex. F.   As this Court has already

19  explained, the regulation governing such "Citizen's Complaints," 15

20  C.C.R. § 3391(b), does not cover complaints by inmates.   The Appeals

21  Coordinator acknowledged this fact in returning the August 27, 2005

22  complaint to Plaintiff because it was submitted outside of the

23  fifteen day window for submitting such grievances.   Compl., Ex. I.

24  Accordingly, Plaintiff's Citizen's Complaints dated February 16,

25  2005 (over three months after the November 12, 2004 incident) and

26  August 27, 2005 (over nine months after the November 12, 2004

27  incident and four months after the April 2005 harassment) are

28  untimely.   See Compl., Exs. F & I.   Because Plaintiff himself admits

1     that he attempted exhaustion by way of the grievance at Complaint

2     Exhibit F, which on its face is untimely, the Court finds that

3     Plaintiff's claims must be dismissed as unexhausted.  Wyatt, 315

4     F.3d at 1120.  Accordingly, this Court **RECOMMENDS** that the

5     unenumerated claims against Defendants Staneff, Walls, Hoffman,

6     Vasquez and Ortiz alleged on pages 63-64 of the Complaint be

7     **DISMISSED**.

8     **B.     Claims that Must be Dismissed Pursuant to Rule 12(b)(6)**

9          Because these claims come before the Court on a motion to

10    dismiss for failure to state a claim and because Plaintiff is

11    appearing *pro se*, the Court construes the Complaint, and all

12    reasonable inferences drawn therefore, liberally and in the light

13    most favorable to Plaintiff.  Thompson, 295 F.3d at 895.

14              **1.    Defendants' Request For Judicial Notice**

15         Before addressing the merits of Defendants' Rule 12(b)(6)

16    motion, this Court will briefly address Defendants' request for

17    judicial notice of federal court records.  Doc. No. 43-2.  Federal

18    Rule of Evidence 201 permits a court to take judicial notice of two

19    types of facts: (1) those that are generally known within the court's

20    territorial jurisdiction, and (2) those that are capable of accurate

21    and ready determination by resort to sources whose accuracy cannot

22    reasonably be questioned.  Fed. R. Evid. 201(b).  Under Ninth Circuit

23    precedent, a court may not take judicial notice of factual findings

24    from other cases, see Wyatt, 315 F.3d at 1114 & n.5, nor may it take

25    judicial notice of any matter that is subject to reasonable dispute,

26    see Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

27         Defendants ask the Court to take judicial notice of the

28    dockets in Case Nos. 03cv2930 and 04cv0903 (both from the Central

District of California), three orders and one civil minutes report from those cases, the dockets in Case Nos. 03-72207 and 03-56455 (both from the Ninth Circuit), and one order from the Ninth Circuit. Doc. No. 43-2.  The Ninth Circuit has held that a court may take judicial notice of "matters of public record," and it may do so without converting a Rule 12(b)(6) motion to dismiss into a summary judgment motion.  <u>Lee</u>, 250 F.3d at 689.  However, "when a court takes judicial notice of another court's opinion, it may do so 'not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.'"  <u>Id.</u> at 690 (quoting <u>S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.</u>, 181 F.3d 410, 426-27 (3rd Cir. 1999)).  In this case, the accuracy of the public records cannot reasonably be questioned and the copies provided by Defendants contain all appropriate file stamps, Pacer or CM/ECF stamps, and other indicia of reliability.  Additionally, the records are provided only for purposes of demonstrating dates on which pleadings and orders were filed or how the courts ultimately ruled on procedural issues.  Defendants do not seek to rely on factual findings by these other courts.  Therefore, because these records are relevant to the resolution of Defendants' 12(b)(6) motion and because they fall within the range of documents allowed under Federal Rule of Evidence 201(b), this Court finds it appropriate to take judicial notice of these exhibits.

For these reasons, this Court **GRANTS** Defendants' request for judicial notice.

///

///

1    **2.   Count 4**

2        In Count 4, Plaintiff alleges that Defendant Barnes violated

3    his constitutional right of access to the Courts.  Compl. at 78.

4    Plaintiff explains that he had litigation pending in the Central

5    District of California (Case No. 04cv0903-DSF(RC)) and the Ninth

6    Circuit (Case No. 03-72207).  Id. at 37.  On June 1, 2004, he

7    submitted a 602 appeal requesting that he be issued all of his legal

8    materials while he was being held in administrative segregation.  Id.

9    In response, Plaintiff alleges that Defendant Barnes sent him a

10   letter dated September 17, 2004, stating that because of the amount

11   of legal materials involved, Plaintiff would only be allowed one box

12   of legal materials at a time.  Id. at 39.  Plaintiff claims the

13   limitation to one box at a time caused him to miss the deadline for

14   filing a request for a Certificate  of Appealability in the Ninth

15   Circuit in Case No. 03-72207 because he was using his box of legal

16   research for Case No. 04cv0903-DSF(RC) and, therefore, could not swap

17   it out with the box for Case No. 03-72207.  Id. at 37-38; see also

18   Pl.'s Opp'n at 14 (referring the Court back to the allegations in his

19   Complaint).  He seeks relief in the form of equitable tolling in the

20   Ninth Circuit case.  Id.

21       Defendants respond that this claim is frivolous and must be

22   dismissed.  Defs.' Mem. at 10-11.  Defendants request that the Court

23   take judicial notice of the dockets from Plaintiff's various federal

24   cases in order to allow Defendants to demonstrate why Plaintiff's

25   claim is frivolous.[8]  Relying on these dockets and Plaintiff's own

26   exhibit, Defendants submit that Plaintiff's certificate of

27

28   _____

     [8]   As previously noted, the Court grants Defendants' request.

1   appealability was ruled upon long before Plaintiff even was placed

2   in administrative segregation and subjected to the "one box at a

3   time" rule.  Id.  Additionally, Defendants argue that Plaintiff's

4   claim that he was working on Case No. 04cv0903-DSF(RC) while he was

5   pursuing his appeal in Case No. 03-72207 is frivolous because he did

6   not, in fact even initiate the 04cv0903-DSF(RC) case until six months

7   after the Ninth Circuit denied the certificate of appealability.  Id.

8   at 10-11.  Finally, even if all of the above were not true,

9   Defendants contend that Plaintiff's claim is frivolous because the

10  appeal he sought to file related to his third successive petition.

11  Id.  Accordingly, Defendants argue that Plaintiff cannot show that

12  Defendant Barnes impeded a *nonfrivolous* attack on his criminal

13  conviction.  Id.

14      Prisoners have a constitutional right of access to the Courts

15  guaranteed by the Fourteenth Amendment.  Bounds v. Smith, 430 U.S.

16  817, 821 (1977).  "[A]ccess to the courts means the opportunity to

17  prepare, serve and file whatever pleadings or other documents are

18  necessary or appropriate in order to commence or prosecute court

19  proceedings affecting one's personal liberty, or to assert and

20  sustain a defense therein, and to send and receive communications to

21  and from judges, courts and lawyers concerning such matters."  Lewis

22  v. Casey, 518 U.S. 343, 384 (1996) (quoting Hatfield v. Bailleaux,

23  290 F.2d 632, 637 (9th Cir. 1961)).

24      This right is limited to cases where the inmate is able to

25  demonstrate an "actual injury" to his ability to litigate a case.

26  Lewis, 518 U.S. at 349-53.  The Ninth Circuit has defined "actual

27  injury" as a "specific instance in which an inmate was actually

28  denied access to the courts."  Vandelft v. Moses, 31 F.3d 794, 796

-24-                                    06cv1578-WQH (BLM)

1  (9th Cir. 1994) (quoting <u>Sands v. Lewis</u>, 886 F.2d 1166, 1171 (9th

2  Cir. 1989)).  However, actual injury exists only if "a nonfrivolous

3  legal claim has been frustrated or was being impeded." <u>Lewis</u>, 518

4  U.S. at 353.  Where a prisoner asserts a backward-looking claim

5  seeking a remedy for a lost opportunity to present a legal claim, he

6  must show: "1) the loss of a 'nonfrivolous' or 'arguable' underlying

7  claim; 2) the official acts frustrating the litigation; and 3) a

8  remedy that may be awarded as recompense but that is not otherwise

9  available in a future suit." <u>Phillips v. Hust</u>, 477 F.3d 1070, 1076

10  (9th Cir. 2007) (citing <u>Christopher v. Harbury</u>, 536 U.S. 403, 413-14

11  (2002)).

12       In this case, Defendants are correct that Plaintiff fails to

13  demonstrate an actual injury because his claim is frivolous.  <u>See</u>

14  <u>Lewis</u>, 518 U.S. at 353.  In Case No. 03-72207, Plaintiff filed an

15  application for leave to file a second or successive petition.

16  Request for Judicial Notice ("RJN"), Ex. 4.  On July 24, 2003, the

17  Ninth Circuit construed this filing as a notice of appeal and

18  transferred it back to the Central District of California with

19  instructions that it be treated as a motion for a certificate of

20  appealability.  <u>Id.</u>  Upon receiving the motion from the Ninth

21  Circuit, the Central District denied Plaintiff's motion for a

22  certificate of appealability (Case No. 03cv2930-CBM (RC)).  <u>Id.</u>, Ex.

23  3.  The Central District then forwarded the record of Plaintiff's

24  case back to the Ninth Circuit.  <u>Id.</u>, Ex. 1.  On November 18, 2003,

25  the Ninth Circuit also denied Plaintiff's request for a certificate

26  of appealability (Case No. 03-56455).  <u>Id.</u>, Ex. 6.  Thus, Defendant

27  Barnes' alleged conduct between June and September 2004 did not

28  deprive Plaintiff of an opportunity to file a certificate of

1   appealability in Case No. 03-72207 — he already had filed one and
2   received a decision from both the district court and the Ninth
3   Circuit.  C.f. Christopher, 536 U.S. at 414 (prisoner must
4   demonstrate "the loss of an opportunity to seek some particular order
5   of relief" to state a claim of denial of access to courts).  Nor were
6   the certificates denied based on untimeliness, which could be
7   attributed to prison officials' delay.  Both courts denied the
8   certificates because the underlying petition was successive.  RJN,
9   Exs. 3 & 6.

10      Plaintiff's claim that the "one box at a time" limitation
11   impaired his ability to file also does not stand up to scrutiny.  As
12   already discussed, Plaintiff had received a decision from the Ninth
13   Circuit on his motion for a certificate of appealability by November
14   18, 2003.  He did not even file Case No. 04cv0903-DSF(RC) until
15   February 10, 2004.  See RJN, Ex. 7.  Thus, he could not have been
16   working on Case No. 04cv0903-DSF(RC) at the time his motion for a
17   certificate of appealability was due.  Moreover, Plaintiff was not
18   confined to administrative segregation and subjected to Defendant
19   Barnes' "one box at a time" rule until May 17, 2004.  See Compl., Ex.
20   A (Administrative Segregation Unit Placement Notice).  As such, the
21   Court finds that Plaintiff has failed to allege an actual injury.
22   Lewis, 518 U.S. at 353.

23      Furthermore, Plaintiff does not seek relief that is within
24   the purview of this Court to grant.  The issue is not whether the
25   plaintiff will ultimately prevail, but whether he has properly stated
26   a claim upon which relief could be granted.  Jackson, 353 F.3d at
27   755.  Plaintiff asks that as a result of the alleged denial of access
28   to the courts, this Court afford him equitable tolling of the statute

1   of limitations in his habeas case.   This Court has no authority to

2   mandate that equitable relief be provided in another case before a

3   different judge.[9]   Therefore, Plaintiff's claim fails to state a

4   claim for which relief could be granted.   <u>See</u> Fed. R. Civ. P.

5   12(b)(6); <u>Jackson</u>, 353 F.3d at 755; <u>see also</u> <u>Phillips</u>, 477 F.3d at

6   1076 (prisoner must seek a remedy that may be awarded).   For these

7   reasons, the Court **RECOMMENDS** that Count 4 be **DISMISSED**.

8        **3.   <u>Count 5</u>**

9        In Count 5, Plaintiff alleges that while still housed in

10  administrative segregation, Defendant McMinn denied Plaintiff legal

11  copies, which resulted in a denial of meaningful access to the

12  courts.   Compl. at 42.   Specifically, he claims that on July 12,

13  2004, Defendant McMinn denied his request for copies, instead

14  suggesting that Plaintiff copy his motion by hand.   <u>Id.</u> at 43.

15  Plaintiff subsequently filed his motion in Case No. 04cv0903-DSF(RC)

16  without serving opposing counsel.   <u>Id.</u>   The Central District returned

17  the motion to Plaintiff unfiled due to Plaintiff's failure to serve

18  opposing counsel.   <u>Id.</u>   Plaintiff gave the order and motion to

19  Defendant McMinn and asked for copies so that he could mail the

20  motion out by July 22, 2007 (in a second attempt to have it filed).

21  <u>Id.</u> at 43-44.   According to Plaintiff, Defendant McMinn never

22  returned the motion or copies and refused to take additional papers

23  to the library for copying because he claimed other inmates were

24  ahead of Plaintiff in line.   <u>Id.</u> at 44-46.   Plaintiff states that

25  the motion ultimately was denied and that this denial is attributable

26

27  _____

28        [9]   It also does not appear that relief in the form of equitable tolling
     would resolve Plaintiff's successive petition problem.

1   to Defendant McMinn's actions in denying him access to the courts.

2   Id. at 47.

3   Defendants argue that Plaintiff cannot demonstrate that

4   Defendant McMinn impeded his ability to litigate Case No. 04cv0903-

5   DSF(RC) for two reasons.   Id. at 11-12.   First, the docket from

6   04cv0903-DSF(RC) reflects that Plaintiff did succeed in filing his

7   motion — which was entitled "Notice of Motion and Motion for an Order

8   to Demand All Legal Material and Legal Books Returned to Inmate or

9   Order to Show Cause Why" — and it was ruled on immediately.   Id. at

10  11.   Specifically, the district court denied the motion, but advised

11  the warden and corrections officers that Plaintiff was representing

12  himself in a pending proceeding and required access to writing

13  materials and the prison law library, as permitted by prison rules.

14  Id. at 12; RJN, Ex. 9.   Second, Defendants argue that Plaintiff's

15  claim against Defendant McMinn fails because Plaintiff's problems in

16  obtaining copies were the result of his own failure to follow proper

17  procedures.   Id.   Defendants cite to Chief Deputy Warden Oliveros'

18  response to Plaintiff's grievance concerning the copies, which

19  states:

20          [I]t has been determined that you have not been
            following proper procedures in your requests. Proper
21          procedure dictates that you submit requests for legal
            copies through the institutional mail on Inmate
22          Request forms, during pre-scheduled law library
            visits, or submitted on an Inmate Request when the
23          assigned Legal Officer is delivering other
            documentation to your cell.   Written request for
24          legal copies take a minimum of three business days to
            process.

25

26  Compl., Ex. C.   In light of these issues, Defendants argue that

27  Plaintiff's allegations fail to state a claim because Plaintiff's

28  problems were attributable to his own actions, not those of Defendant

1  McMinn.   Defs.' Mem. at 12.

2       In his opposition, Plaintiff reiterates his allegations and

3  refers back to his Complaint.   Pl.'s Opp'n at 14.

4       As an initial matter, Plaintiff fails to demonstrate that his

5  alleged inability to access the courts was due to Defendant McMinn's

6  improper conduct instead of his own.   Plaintiff states that he first

7  requested copies from Defendant McMinn on July 12, 2004.   Compl. at

8  43.   The docket from Case No. 04cv0903-DSF(RC) reflects that the

9  court received his motion two days later on July 14, 2004.   RJN, Ex.

10 7.   Given that under prison procedures, "[w]ritten request for legal

11 copies take a minimum of three business days to process," (Compl.,

12 Ex. C), Plaintiff's own pleadings demonstrate that his inability to

13 obtain copies before filing was due to his failure to timely request

14 them and wait three or more business days for the copies to be

15 returned.   This is reflected in his subsequent complaint that

16 Defendant McMinn did not return copies on July 22, 2004, of document

17 that Plaintiff had only provided to him the day before.   Compl. at

18 43-44.   A self-inflicted injury attributable to Plaintiff's own

19 impatience and disregard for prison procedures cannot constitute the

20 "actual injury" necessary to state a claim for denial of access to

21 the courts.   See Phillips, 477 F.3d at 1076 (denial of access to

22 courts claim requires showing of what official acts frustrated the

23 litigation).

24       Nor does the fact that Plaintiff's original motion was

25 rejected by the Central District on discrepancy alone support a

26 cognizable denial of access claim.   As previously noted, the right

27 of access to the courts is limited to cases where the inmate is able

28 to demonstrate an "actual injury" to his ability to litigate a case,

1  <u>Lewis</u>, 518 U.S. at 349-53, as shown via a "specific instance in which

2  an inmate was actually denied access to the courts," <u>Vandelft</u>, 31

3  F.3d at 796.  While Plaintiff's motion was rejected for filing on

4  July 14, 2004, it was accepted two weeks later on July 28, 2004.

5  RJN, Ex. 7.  One day later, the district court ruled on the motion.

6  <u>Id.</u>, Exs. 7 & 9.  While the court denied the motion, it did expressly

7  advise the Warden and corrections officers that Plaintiff needed

8  access to written materials and the law library.  <u>Id.</u>, Ex. 9.  Thus,

9  not only did Plaintiff receive the sought after access to the court

10 (the filing of his motion), he received some relief from the court

11 (the warning to the prison officials).  As such, he fails to allege

12 a specific instance where he actually was denied access to the court.

13 <u>Vandelft</u>, 31 F.3d at 796; <u>Phillips</u>, 477 F.3d at 1076 (a plaintiff

14 must show "a lost opportunity to present a legal claim").

15         For the foregoing reasons, this Court **RECOMMENDS** that Count

16 5 by **DISMISSED.**

17              **4.   Claims Against Defendants Cota and Stovall**

18         Plaintiff alleges in a general manner on pages 72-74 of his

19 Complaint that Defendants Cota and Stovall, both of whom apparently

20 work(ed) in the Appeals Coordinator's Office, prevented him from

21 exhausting several of his grievances.  Compl. at 72-74.  While no

22 specific count is attached to these claims, Plaintiff also lists in

23 the declaration accompanying his Complaint that Defendants Cota and

24 Stovall "refused to process valid appeals, and rejected Plaintiff's

25 appeals as untimely."  Cleveland Decl. ¶ 23.

26         Defendants argue that any claims against Cota and Stovall

27 must be dismissed for failure to state a claim.  Defs.' Mem. at 19.

28 More precisely, Defendants submit that a prison official's

1  involvement and actions in reviewing and/or investigating a

2  prisoner's administrative appeal cannot serve as the basis for

3  liability in a § 1983 action.  Id.  (citing Mann v. Adams, 855 F.2d

4  639, 640 (9th Cir. 1988), Ramirez v. Galaza, 334 F.3d 850 (9th Cir.

5  2003) and Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993)).

6       Plaintiff opposes Defendants' motion, arguing that he was

7  denied access to the courts when the Appeals Coordinator failed to

8  process his Citizen's Complaints and 602 appeals. Pl.'s Opp'n at 21.

9       "To state a claim under section 1983, a plaintiff must allege

10  the violation of a right secured by the Constitution and laws of the

11  United States...." West v. Atkins, 487 U.S. 42, 48 (1988).  However,

12  "inmates lack a separate constitutional entitlement to a specific

13  prison grievance procedure."  Ramirez, 334 F.3d at 860.  As the

14  Eighth Circuit explained under facts similar to those presented here:

15       "[A prison] grievance procedure is a procedural right
         only, it does not confer any substantive right upon
16       the inmates. Hence, it does not give rise to a
         protected liberty interest requiring the procedural
17       protections envisioned by the fourteenth amendment."
         Thus, defendants' failure to process any of Buckley's
18       grievances, without more, is not actionable under
         section 1983. (internal citation omitted).

19

20  Buckley, 997 F.2d at 495.

21       In this case, Plaintiff's claims against Cota and Stovall

22  stem from their alleged failure to process his complaints and appeals

23  through the prison's grievance system.  Because Plaintiff does not

24  have a constitutional right to a prison grievance system, Ramirez,

25  334 F.3d at 860, or certain treatment within an established one,

26  Buckley, 997 F.2d at 495, Plaintiff fails to state a claim under

27  section 1983.  West, 487 U.S. at 48.

28  ///

1       Moreover, even if the Court instead views Plaintiff's claim

2  through the denial of access to the courts lens, which Plaintiff

3  presents in his opposition, Plaintiff still fails to state a claim.

4  As discussed *supra*, an inmate's constitution right of access to the

5  courts, <u>Bounds</u>, 430 U.S. at 821, is limited to cases where the inmate

6  is able to demonstrate an "actual injury" to his ability to litigate

7  a nonfrivolous claim, <u>Lewis</u>, 518 U.S. at 349-53.  In his Complaint,

8  Plaintiff summarizes the appeals that Cota and Stovall allegedly

9  failed to process properly.  Among these, Plaintiff lists his

10  (1) April 25, 2005 Citizen's Complaint regarding the May 17, 2004

11  incident, (2) his February 16, 2005 and August 27, 2005 Citizen's

12  Complaints regarding the November 12, 2004 incident, and (3) a

13  director's level complaint regarding the August 6, 2004 incident

14  involving Defendants Graham and Staneff.  Compl. at 72-74.  This

15  Court already has determined that all of these complaints are

16  unexhausted because Plaintiff failed to file them within the fifteen

17  day time period (as demonstrated by his own handwritten dates on the

18  complaints and admissions in his pleadings).  Thus, any claim based

19  on Cota and Stovall's failures to process these untimely claims after

20  Plaintiff submitted them late would be frivolous.[10]  <u>Lewis</u>, 518 U.S.

21  at 353.

22       The only other specific complaint Plaintiff lists is a

23  "602/Citizen's Complaint" against Defendant Ortiz that he claims to

24  have submitted on July 29, 2005 and attached at Complaint Exhibit I.

25  <u>Id.</u> at 74.  Upon reviewing the "Citizen's Complaint" at Exhibit I,

26

---

27       [10]   Plaintiff also acknowledges in his Complaint that these complaints
were returned to him with screening forms indicating that they were untimely.

28  Compl. at 72-74.

1   this Court learned that it pertained to Ortiz's retaliatory actions
2   on June 7, 2005. Compl., Ex. I. As set forth above, Plaintiff is
3   not eligible to utilize Citizen's Complaints and this allegation is
4   untimely under the prison grievance system because Plaintiff
5   submitted it more than fifteen days after the incident.[11] Thus,
6   Plaintiff also fails to state a nonfrivolous claim as to this
7   complaint.

8       For the reasons stated above, the Court finds that
9   Plaintiff's claims against Cota and Stovall fail to state claims for
10  which relief could be granted. See Fed. R. Civ. P. 12(b)(6);
11  Jackson, 353 F.3d at 755. For this reason, the Court **RECOMMENDS** that
12  these claims be **DISMISSED**.

13  **C.**      **Claims Against Defendants Who Have Not Been Served**

14      As previously noted, Plaintiff has never served Defendants
15  Staneff, Avila, Hill, Merto, Ortiz, Graham and Camacho. The Court
16  recommends that the District Judge *sua sponte* dismiss the claims
17  against these Defendants. Rule 4(m) of the Federal Rules of Civil
18  Procedure provides that "[i]f service of the summons and complaint
19  is not made upon a defendant within 120 days after the filing of the
20  complaint, the court, upon motion or on its own initiative after
21  notice to the plaintiff, shall dismiss the action without prejudice."
22  Fed. R. Civ. P. 4(m). Here, more than 120 days have passed since the
23  summons was issued and USM 285 forms for each unserved Defendant were
24  returned unexecuted. See Doc. No. 26 (reflecting April 23, 2007 as
25  being the most recent occurrence of a summons being returned

26

27  ───────────────

    [11]      And, of course, the Court once again notes that Defendant Ortiz was
28  never served.

1   unexecuted).   Because Defendants highlighted in their motion to
2   dismiss which Defendants have not been served and because Defendants
3   seek dismissal of the Complaint, Plaintiff has been put on notice
4   that the case may be dismissed against all Defendants.   Moreover,
5   Plaintiff has filed nothing since April 2007 that suggests he has
6   attempted further service of these Defendants.   Accordingly, to the
7   extent that any claims remain against the unserved Defendants, this
8   Court **RECOMMENDS** that the District Judge **DISMISS** Defendants Staneff,
9   Avila, Hill, Merto, Ortiz, Graham and Camacho pursuant to Rule 4(m).

10  **D.      <u>Qualified Immunity</u>**

11        In what sequentially would be Count 11, Plaintiff claims that
12  Defendants Avila and Moreno violated his Eighth Amendment rights and
13  the Americans with Disabilities Act ("ADA") by refusing to allow him
14  to   wear   his   medically-prescribed   orthopedic   shoes   while   in
15  administrative segregation.   Compl. at 65-71, 80.   Without these
16  shoes, Plaintiff suffers pain when walking and, therefore, was unable
17  to exercise outdoors during his term in administrative segregation.
18  <u>Id.</u>

19        Defendants argue that Defendant Moreno[12] is entitled to
20  qualified immunity on this count because Moreno simply was enforcing
21  prison rules, which prohibit inmates in administrative segregation
22  from wearing hard shoes with steel components.   Defs.' Mem. at 16.
23  More precisely, Defendants assert that Moreno's actions were in
24  conformity with the *Armstrong* remedial plan[13], Section I.22, which

25  _____

26        [12]      Defendants discuss only Defendant Moreno because Plaintiff never
      served Defendant Avila.

27        [13]      This refers to a plan that resulted from <u>Armstrong v. Davis</u>, Case No.
28  94cv2307 (NDCA), a class action to enforce the Americans with Disabilities Act

1   provides: "[h]ealth care appliances, as defined in CCR, Title 15,

2   Section 3358, shall be taken away from an inmate in ASU, SHU or other

3   disciplinary detention units only to ensure the safety of persons,

4   the security of the institution, or to assist in an investigation..."

5   Id. at 18.   Defendants cite to the third level response to

6   Plaintiff's administrative appeal of this claim (log no. 03-366), as

7   evidence that Plaintiff was made aware of this administrative

8   segregation policy prohibiting hard shoes, like Plaintiff's, because

9   they pose a security hazard.   Id. (citing Compl., Ex. H).

10         In his opposition, Plaintiff claims that his orthopedic shoes

11   did not have steel components.   Pl.'s Opp'n at 18.

12         Qualified immunity shields government officials performing

13   discretionary functions from liability for civil damages unless their

14   conduct violates clearly established statutory or constitutional

15   rights of which a reasonable person would have known.   Anderson v.

16   Creighton, 483 U.S. 635, 638-40 (1987).   "Qualified immunity is 'an

17   entitlement not to stand trial or face the other burdens of

18   litigation.'"   Saucier v. Katz, 533 U.S. 194, 200 (2001) (quoting

19   Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).   This privilege is

20   "an immunity from suit rather than a mere defense to liability; and

21   like an absolute immunity, it is effectively lost if a case is

22   erroneously permitted to go to trial."   Id. at 200-01 (quoting

23   Mitchell, 472 U.S. at 526).   Thus, the Supreme Court "repeatedly

24   [has] stressed the importance of resolving immunity questions at the

25   earliest possible stage in litigation."   Id. at 201 (quoting Hunter

26   v. Bryant, 502 U.S. 224, 227 (1991) (per curiam)).

27   _____

28    in California prisons.   Defs.' Mem. at 18, n.12.

1    In Saucier, the Supreme Court established a two-step inquiry
2  for determining whether an official is entitled to qualified
3  immunity. Scott v. Harris, 127 S.Ct. 1769, 1774 (2007); Saucier, 533
4  U.S. at 201; Phillips v. Hust, 477 F.3d 1070, 1079 (9th Cir. 2007).
5  "A court required to rule upon the qualified immunity issue must
6  consider, then, this threshold question:  Taken in the light most
7  favorable to the party asserting the injury, do the facts alleged
8  show the officer's conduct violated a constitutional right?  This
9  must be the initial inquiry." Saucier, 533 U.S. at 201.  "If no
10 constitutional right would have been violated were the allegations
11 established, there is no necessity for further inquiries concerning
12 qualified immunity." Id.  Only if a constitutional violation could
13 be found should the court move on to the second step and consider
14 whether the right was clearly established such that "it would be
15 clear to a reasonable officer that his conduct was unlawful in the
16 situation he confronted." Id. at 202.  If an officer makes a
17 reasonable mistake as to what the law requires — i.e. the right is
18 not clearly established — the officer is entitled to immunity. Id.
19 at 202-03.

20    The Court must first consider then whether, taken in the
21 light most favorable to Plaintiff, the facts alleged show that
22 Defendants Avila and Moreno's conduct violated the Eighth Amendment[14].

23

24    [14]    Plaintiff has presented no evidence that his ADA claim rises to the
25 level of a constitutional violation and this Court declines at this time to find
   that ADA violations are synonymous with constitutional violations.  In fact, in
26 distinguishing ADA violations from *constitutional* claims related to denial of
   access to the courts, the Ninth Circuit specifically referred to prisoner ADA
27 claims as seeking to enforce "a *statutorily*-protected interest in *equal* access
   with other prisoners" (emphasis in original). Armstrong v. Davis, 275 F.3d 849,
28

1    Saucier, 533 U.S. at 201.   As Defendants appear to concede by

2    skipping over this threshold question and arguing the second prong

3    of the Saucier test, Plaintiff's allegations may be sufficient to

4    show that the correctional officers violated Plaintiff's Eighth

5    Amendment rights by depriving him of his medically-prescribed shoes

6    and, thereby, depriving him of outdoor exercise for a prolonged

7    period of time.   The Ninth Circuit has long held that "a deprivation of

8    outdoor exercise to prisoners incarcerated for long periods and under

9    highly restrictive conditions of confinement constitute[s] cruel and

10   unusual punishment" under the Eighth Amendment.   Allen v. City &

11   County of Honolulu, 39 F.3d 936, 938-939 (9th Cir. 1994) (citing

12   Spain v. Procunier, 600 F.2d 189 (9th Cir. 1979)).   Here, Plaintiff

13   claims to have been detained in administrative segregation without

14   his shoes from May 17, 2004 through July 25, 2005.   Compl. at 68.

15   The Allen court found a constitutional deprivation sufficient to

16   overcome a claim of qualified immunity where the prisoner had been

17   detained in disciplinary segregation for only four months.   Allen,

18   39 F.3d at 939.   Therefore, the Court finds Plaintiff has plead

19   sufficient facts to allege a constitutional violation.   Saucier, 533

20   U.S. at 201.

21        The next question then is whether the right was clearly

22   established such that "it would be clear to a reasonable officer that

23   his conduct was unlawful in the situation he confronted."   Id. at

24   202.   Defendants argue that it was not sufficiently clear to Moreno

25   that he was violating Plaintiff's rights because Moreno simply was

26   enforcing a prison regulation enacted in conformity with the

27   ───────────────────

28   880 (9th Cir. 2001).

1    *Armstrong* remedial plan.   Defs.' Mem. at 18.   Defendants cite to

2    Dittman v. California, 191 F.3d 1020, 1027 (9th Cir. 1999) for the

3    Ninth Circuit precedent establishing that "when a public official

4    acts in reliance on a duly enacted statute or ordinance, that

5    official ordinarily is entitled to qualified immunity."   Id. at 18.

6    Though Defendants have correctly cited the conclusion of the Dittman

7    court, the Dittman case is inapplicable to the instant situation

8    because Dittman addressed only statutes and ordinances, not prison

9    policies.   "Such a policy, of course, could not make reasonable a

10   belief that was contrary to a decided body of case law."   Wilson v.

11   Layne, 526 U.S. 603, 617 (1999).   Only if the applicable case law was

12   unclear or undeveloped would it be appropriate for the Court to find

13   qualified immunity shielded an officer who reasonably relied upon a

14   formal prison policy.   See id.

15          On the facts currently before this Court, the Court finds

16   that Moreno is not entitled to qualified immunity.   It has been

17   clearly-established in this Circuit since at least 1979 that "a

18   deprival of outdoor exercise to prisoners incarcerated for long

19   periods and under highly restrictive conditions of confinement

20   constitute[s] cruel and unusual punishment" under the Eighth

21   Amendment.   Allen, 39 F.3d at 938-939.

22          Furthermore, from the limited evidence presented by

23   Defendants, it does not appear that Moreno in fact acted in

24   conformance with the *Armstrong* remedial plan.   While it appears that

25   Defendants quoted from the 2001 revision of the plan, they have not

26   provided the Court with a full copy of any version of the *Armstrong*

27   remedial plan.   However, according to the original remedial plan

28   filed in Armstrong v. Davis on November 30, 1998 (Case No. 94cv2307,

1  Doc. No. 337), removal of health care appliances is strictly limited

2  as follows:

3        a)   Health care appliances, as defined in CCR
             Section 3358, shall be taken away from an inmate
4            in ASU, SHU or other disciplinary detention
             units only to ensure the safety of persons, the
5            security of the institution, or to assist in an
             investigation (which may include collecting the
6            appliance as evidence of a crime) *and only when
             supported by documented evidence*.   No inmate
7            will be deprived of his or her appliance because
             of the acts of another inmate.

8

9        b)   If the health care appliance presents a direct
             and immediate threat to safety and security, the
             appliance may be taken away immediately by any
10           custody staff.   The senior custody officer on
             duty may temporarily authorize the taking away
11           of an inmate's appliance for any of the reasons
             listed in the foregoing paragraph; *however, the*
12           *process described below must be followed as soon*
             *as possible, at least by the next business day,*
13           *if the appliance is to be retained*.   In no event
             shall the procedures set out herein obstruct
14           standard protocols for crime scene preservation,
             evidence collection, emergency response or any
15           other measure necessary for the safety of
             persons and security of the institution.

16

17       c)   When a health care appliance is taken away from
             an inmate in special housing for reasons of
18           safety and security, the senior custody officer
             in charge shall consult the Health Care Manager,
             Chief Medical Officer or designee, regarding the
19           inmate's need for the appliance and reasonable
             alternative in-cell accommodations.   The senior
20           officer in charge shall then inform the Warden
             or designee of the incident and the alternative
21           means to accommodate the inmate.   The Warden or
             designee shall decide what course to take
22           regarding depriving the inmate of the appliance
             and providing alternative in-cell accommodation.
23           *If the decision is to retain the appliance, it*
             *will be stored in a designated location in the*
24           *unit and provided to the inmate if needed when*
             *released from his or her cell for yard*, escorts,
25           visits, etc.   Medical staff shall evaluate the
             inmate's ability to function without the
26           appliance, as appropriate.

27  (emphasis added) Case No. 94cv2307, Doc. No. 337, § H.20.   Nothing

28  in the record before this Court demonstrates that Moreno followed

1   proper procedure in retaining Plaintiff's medically-prescribed shoes

2   for over fourteen months **and** failing to provide them to Plaintiff

3   when he was released into the yard for exercise.[15]  Plaintiff attached

4   numerous passes and medical authorization forms to his Complaint,

5   which demonstrate that he required the shoes and had permission to

6   use them (see Compl., Ex. H) and Defendants have provided no contrary

7   evidence.  Moreover, Defendants state in a wholly conclusory manner

8   without any evidentiary support that "Plaintiff was advised that if

9   he needed any help walking in the Administrative Segregation Unit,

10  staff were available for assistance."  Defs.' Mem. at 18.   Absent

11  some support for Defendants' claims, Defendants fail to demonstrate

12  that the law was not clearly-established, that Moreno acted

13  reasonably and that, therefore, he is entitled to qualified immunity.

14  Accordingly, this Court **RECOMMENDS** that the District Judge **DENY**

15  Defendants' motion to dismiss Defendant Moreno.

16                          **CONCLUSION**

17        For all the foregoing reasons, **IT IS HEREBY RECOMMENDED** that

18  the District Court issue an Order: (1) approving and adopting this

19  Report and Recommendation, (2) denying Defendants' Motion to Dismiss

20  Defendant Moreno, and (3) granting Defendants' Motion to Dismiss the

21  remaining Defendants.

22        **IT IS HEREBY ORDERED** that any written objections to this

23  Report must be filed with the Court and served on all parties **no**

24  **later than December 27, 2007**.  The document should be captioned

25  _____

26        [15]   The record before the Court also does not allow the Court to
    determine whether or not Plaintiff's shoes did, in fact, contain metal or whether
27  the presence or absence of removable metal in the shoe would alter the analysis
28  as to whether Moreno complied with the *Armstrong* remedial plan.

1  "Objections to Report and Recommendation."

2        **IT IS FURTHER ORDERED** that any reply to the objections shall

3  be filed with the Court and served on all parties **no later than**

4  **January 18, 2008.**   The parties are advised that failure to file

5  objections within the specified time may waive the right to raise

6  those objections on appeal of the Court's order.   See Turner v.

7  Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

8  DATED: December 4, 2007

9                                          _Barbara L. Major_

10                                         BARBARA L. MAJOR
                                           United States Magistrate Judge

11

12

13

14  COPY TO:

15  HONORABLE WILLIAM Q. HAYES
    UNITED STATES DISTRICT JUDGE

16
    ALL COUNSEL AND PARTIES

17

18

19

20

21

22

23

24

25

26

27

28